Good morning. May it please the court, Joshua Watson for the plaintiff and appellant Brian Brown. I'd like to reserve five minutes for rebuttal. The parties in this case agree that Brian Brown is a person who has a disability. They agree that he is able to perform the essential job functions either with or without accommodation. They agree that he applied for employment and they agree that he was not hired. They agree that the rubric that was used by the employer to decide whether or not he would be hired was restricted to a five question standardized questionnaire. So all of that is agreed upon by the parties and then where we diverge is what was said during that interview and what legal significance does it is there that there are two different stories. So what I would first point out is that if we were to go through certainly when I go through and I look at the evidence that's been provided in terms of what Mr. Brown says he said and what Cemex says he said and then what Cemex says the scoring rubric was. If I take what Mr. Brown says he said and I compare it against the rubric he picks up enough points to end up somewhere in the 16 to 20 score as opposed to the nine that he had. So that's why the difference matters. So to give an example for example I think that the questions that matter most are questions 2, 4, and 5. And so for example... Before you get into that I want to I just want to ask a sort of foundation question. Is it possible I understand you don't think that this is this case but I'm asking just generally is it possible that there could be a discrepancy in how the rubric was applied but not have that be evidence of discrimination? It seems like your case is built on the idea that it doesn't look like they actually followed the process they said they were going to follow the criteria they said they were going to employ in figuring out who to hire. And so this my client is disabled and we everyone knows that and so we're going to have that inference that they didn't follow it for him because of his disability. I understand that's your argument but is it possible that you could just have not following the criteria and not having that be connected to disability? Or is it your position that in a case where you have a person seeking a job who is disabled that then that is the necessary inference? I understand your honor. Thank you. I believe that that is entirely possible and that is a question of fact for the jury. Okay so in that kind of a scenario your position is you can just never resolve this at summary judgment you've got to go to trial and let the jury weigh that and whether they think that the failure to follow the criteria was connected to disability or some other benign reason. Well I think that our case is a little different from that and so I would hesitate before making that categorical of an assertion myself. I think that this case is different because we have the corollary information about what the plaintiff represents are misrepresentations by company witnesses about what they knew and perceived about Mr. Brown's disabilities. And so that's the line of testimony that talks about the time that Mr. Skulik, the vice president, Mr. Ramirez, an operational supervisor, came down to the Tykert plant that was in Roseville that was being switched over to becoming a Cemex plant. And so there's the testimony there about how Mr. Skulik and Mr. Ramirez both visualized Mr. Brown when Mr. Brown was getting off of work and he had gone through a locker room change and so he had come out and instead of wearing his you know his regular work clothes he was wearing shorts and his prosthetic was was very visible and and when he was in the process of doing that he had an interaction with Mr. Skulik and a separate interaction with Mr. Ramirez and and that is something that those two gentlemen say did not occur that the Cemex folks say did not occur and yet there are the declarations from the other employees they say to be clear you know they say that they weren't even there for that and and then we look at the employee declarations to say that they were there for that. But there's no dispute that at all size do he was wearing a prosthetic device. The the question is to what degree yes to the question what there's no dispute about is that Mr. Skulik knew and that Mr. Skulik had learned through a process where he talked about it with a union rep but there is a there was a dispute as to whether Mr. Ramirez knew. Mr. Ramirez did not acknowledge that he knew and both of them I think it's important in this case because it's going to be viewed in the totality of the circumstances if it goes forward why is it that Mr. Skulik is downplaying the degree to which he knew why is Mr. Ramirez saying that he never even went to facility never even saw the issue with the leg and so then that adds to the context so if I wouldn't come to you or any other court and say that because of that testimony simply that we have from Mr. Skulik and Mr. Ramirez that we prove discrimination but it's the totality of the circumstances we have the company saying we have a standardized way that we score things we have their notes about what happened and and we have very importantly not we're not just saying that they that they didn't score fairly we're saying that they didn't apply the facts fairly according to their own notes we're saying that they misrepresented what the facts were misrepresented what the words were that were communicated by Mr. Brown so you have people on the panel who are saying Mr. Brown said a instead of B and then they score him low and those same people are saying oh no I didn't even meet the guy and see his leg you know with with with the the amputation and the and so so the the position that I'm advancing is that in that full context a jury could reasonably say you know I don't think that the employer here the employers representatives are being honest I think that they really did have a discriminatory intent and you know we do have that case authority that talks about the idea of mendacity and so when we talk about the Reeves and the st. Mary's cases you know it is a somewhat a limited space but if the employer is is basically caught in lies if they are saying and the analyze sort of red line but it's employment case so you know if the if the if the employers representatives are misrepresenting what were the lies of the employers representatives so so there it is the distinction between what mr. Brown says he said and what the company representatives said he said in the interview so for example those are the ones that I would focus on would be questions 2 4 & 5 in the in the record so for example question 4 talks about mr. Brown being asked when did you encounter a particular problem with a customer and how did you resolve it and and mr. Brown says you know that he that he gives this very detailed example he names a customer he names what happens and and the account from CEMEX it doesn't it doesn't have that and and then they score him very very low on that one they gave him a 2 out of 5 question 5 talks about a time that you had a or mr. Brown had it I know you're gonna do the totality but let's focus on just that one for a second because I'm still sort of wrestling about how I think about this analysis so yes we if we take his evidence as true as we have to at this stage there's a discrepancy he gives a lot more detail and flavor to the answer the legal standard is that we have to have a because of disability inference we have to connect it to his disability there's nothing about question 2 that gets at his disability there's nothing about as far as I understand there's nothing about the question or the answer that relates to his disability or his his status as an employee or anything that would sort of bring a whiff of that into this so again I understand the totality but if I'm just looking at that the fact that he's a disabled person and that there wasn't we'll say an error in how they assessed this interview and how it went that doesn't automatically provide the link would you agree with that I do agree with that and I think the question here and why I think it's a question for a jury is when we when we do put it in the totality of the circumstances how do we how do we interpret the subjective intent of the interviewers when they write the notes the way they do because I agree with you there are certain I think that there are circumstances in which a juror might say a finder of fact might say you know people take notes differently right and maybe these notes just aren't good notes but maybe what really happened here is which is talking about a different evaluation of an interview and there's another world in which a finder of fact can look at the same set of information and say no no like you're omitting key information what is this business about you know not admitting that you know about the leg why are you downplaying that and infer from that mendacity and the context that there's a discriminatory intent but as in many discrimination cases the and not all of course but but as in many discrimination cases the discriminatory intent needs to be inferred in this case and I would agree that in this case there is not a an email that said we're not going to hire this guy because you know he's an amputee nobody expressly said that to him we don't have express jokes about his you know a disabled status or anything like that so it really is a question of whether you can infer from the totality of the circumstances so I want to make sure I understand your position on the record so this the legal standard as I understand it is at this point the plaintiff has the obligation to produce some evidence suggesting a intent some evidence so you would point to there's a discrepancy on how many of the interviewers knew he was disabled because they're denying it or suggesting that they didn't see when there's evidence that they did you would say that a couple of the answers unlike the one that we just were talking about the omission did have something to do with his disability he says that he referenced as being disabled in an answer and then their summary of the answer to that question has no inference of disability so I guess you would point to that correct yes you would point to the fact that he's disabled and he wasn't hired what else what am I missing there is the the notion that in a an appropriate business activity absent some sort of animus there is no reason for the interviewers to misrepresent what mr. Brown said in their notes and the fact that they misrepresented what he said in their notes in order to give him a low score because if you if you take their rubric and you take what he said he gets a much higher score and so the fact that they misrepresent what he says and then give him a lower score raises the question why are you doing that but why but why do you draw that inference that's the thing I'm struggling with I understand that argument entirely but there could be all kinds of reasons as you admitted just a minute ago there could be all kinds of reasons why the notes are bad these interviewers are sloppy their their intent is to just kind of shorthand summary not detailed and you know detailed recounting of what was there right like there could be all kinds of reasons why there's a mismatch between his memory and their notes that have nothing to do with discrimination so I'm looking around for what is the thing that tells me that the jury could say the reason the explanation is discriminatory and what I'm mostly finding is this is a disabled applicant a disabled applicant and the employer misrepresented their knowledge of the level of his of his disability well they're the level their knowledge of his disability why are they misrepresented with that fact when it's undisputed that one of the three interviewers in the room did know and wasn't denying the fact that he knew couldn't we just assume that everybody in the room knew at least one of them did one of them says that he knew and the others say they did not know mr. mr. Ramirez says that he did not know I'd say that he does not know when he does know and he saw it and and then there is this notion of mr. schulich testifying that mr. Ramirez had never visited the plant so if we take mr. Ramirez and and and we acknowledge that he's saying that he didn't know but mr. Ramirez according to the testimony of the plaintiffs and those two witnesses came to the plant in Roseville observed mr. Brown with his prosthetic exposed and so he knew why in the world would mr. Ramirez say that he didn't know why would he say he wasn't there why would mr. schulich say that mr. Ramirez wasn't there and in the context of this case it's sort of strange to think that he wouldn't be there mr. Ramirez because mr. Ramirez was an important operational manager and they're buying out this big plant that's you know it's a big transaction of course the regional operations person is going to take a look at it and then the two folks who were the witnesses the employee witnesses so that yeah he came there he moved around equipment he made a bunch of trips and so it is that appearance of misrepresentation it's not the appearance it's an actual misrepresentation that provides a taint that moves into a reasonable question where a reasonable juror could say you know I just don't believe him I think it goes back to this idea of you know when you're at trial if you if you and as we instructors you're a trial if you don't believe a witness about something you don't have to believe them about anything and so there's something odd going on here there's something odd about the way that they're not fairly documented just I just want to clarify one point before you sit down which is that this I want to make sure I'm not missing anything here but the district court said that he failed to meet on his his prima facie burden at the third prong that is the causal connection the because of right yes and I gather your response to that is that certainly there was enough evidence to get beyond a prima facie case that's right your honor and I realize I've talked if I can just close is that you know here there is this in the factual pattern that we have there's this sort of factual unity between the prima facie case and then the proposed you know alternative business reason for why he wasn't given the job and it's not as though we have one set of facts that we say oh you know perhaps in an interview made a joke about you know disability or something and so we infer animus and then separately the the application process comes back and cures it it's that those things are factually intertwined if the if the the interview process is is unfair and bias and discriminatory it cannot be the thing that cures the the the prima facie case because it's it's actually the same thing it's the same transaction all right we'll give you a little bit of time for rebuttal thanks thank your may it please the court Patrick Burns on behalf of the appellee appellant's position in this appeal here today and in his brief all boils down to the main contention that the interview scores were wrong that they were graded incorrectly or that somehow there's a disputed fact as to what the was said in the interview but ultimately the law provides that the wisdom or the correctness of an employer's criteria does not establish an inference of discrimination under the prima facie burden and step one of McDonnell Douglas that was and that's especially true where the employer makes employer makes the determination in good faith so the wild case from California talks about that this court's decision in Dodson is directly on point saying that it wasn't in good faith there's a factual dispute your honor there's he's brought forth no evidence that it was not made in good faith every one of the interviewers has testified that that they scored them you know has already pointed out one of the interviewers definitely one and possibly two of the interviewers didn't even know he had a disability and their scores were similar to the other one so where's the evidence of this this lack of good faith that they really did know about the two of them you know he talks about Ramir is that Ramirez which is well your honor the awareness alone is insufficient I mean aware age discriminations you can tell someone's age or certain other protected categories right you often have an awareness but many cases including the Chisholm case that we cited to our brief says that an employer's awareness alone doesn't establish discrimination and judge Forrest really really touched on it one of the questions which is you have it has to be a connection a bridge a nexus to discrimination he has failed to show that all he let me ask you this so he says this is what I really said it during the course of the interviewers in answer to these questions right he says one thing right right and the notes show something else that's he claims that yes right I mean they he says that they didn't really account they didn't really record or make note of my my answers that's irrelevant your honor because the fact but why isn't that a factual dispute well your honor that's that factual dispute doesn't matter because the correctness or the wisdom of the internal application has to connect somehow to the discrimination it can't just be you were wrong you didn't record what I said properly I said something different all that isn't sufficient and Dotson is directly on point there was an you know why don't you just take take his argument his argument is well there was other there was other evidence you need to look at in the totality of all the circumstances your honor there really wasn't there was all he's raised is that his interview scores were different and that's insufficient Dotson instructs us that and then he and then this issue of a one or two of the interviewers might have had an awareness Chisholm says that's not like you put it all together but but two things that are zero don't add up to anything I mean there has to be on the awareness is that they're lying about their awareness which which is a different thing than just plain awareness that's why are they covering it up right that that's the that's the fact that he wants to bring out and say that maybe we could draw some sort of inference from that that that's not true though from the record your honor first the mr. Skolnik did say he was aware I mean he found out about it before the interview and then the as far as mr. Ramirez the fact dispute about that it's not a whether he's lying or not he I think said he couldn't remember if he was at the plant that day or he wasn't at the plant that day and there's a couple of employees that say he might have been at the plant that day but whether he was there that day or not it doesn't mean he knew about this disability that he saw this person that he interacted with there's just no evidence in the record and actually if you go back to the briefs he doesn't cite to these alleged lies it's not even cited in the brief in the in the record he points to those declarations by the employees but he doesn't even explain what what the lie is and so there really isn't a lie here and all these disputed this is really just a plaintiff trying to manufacture an issue of fact to survive summary judgment I mean imagine how easy it would be for a plane you know our case laws pretty generous in these employment discrimination cases that at the prima facie on summary judgment the plaintiff has to present very little evidence your honor that is true although I would just add there is there is sufficient case law that even on prima facie if you don't connect it to discrimination it fails I would also say that this confirmed this court can easily affirm on the alternative ground that he's failed to show pretext under step three so even under step one step one is where the district court didn't go there though right correct but this court can affirm on a different ground which is the district court held there was no prima facie case made out and that was the proper decision because there's just no bridge no nexus at all to discrimination but even if you said okay we're gonna sort of infer this based on a few of these pretext sort of discussed at the district court and the district court just opted not to reach it because I decided to just do it on prima facie case or was was your motion focused just on the prima facie case no all of this was addressed below it's just the district court stopped because it didn't have to go for the plaintiff rely on any additional evidence beyond what we've been discussing today for pretext beyond what no you're not including in this appeal we brought up we we ultimately analyzed our brief analyzes all three steps of McDonnell Douglas the other two in the alternative and says we've satisfied step two by coming forward even if we get past prima facie on to step to semex has satisfied that by showing there was a non-discriminatory reason it was the low interview scores now the burden shifts back to him to show pretext and under pretext there's really two things the st. Mary's case talks about this you have to show the employers explanation was wrong and then you have to show that it connects to discrimination it's that second part especially that he really fails right and and there's no dispute here that the interview scores were the only thing that was used to have these drivers rehired when the acquisition was happening so I want to just did he work a full day I'm sorry your honor what was a full day did the plaintiff work a full day work a full day when your honor I'm not sure how many hours a day to the drivers work I'm not sure and I'm not sure if that's in the record your honor but the context of this is important and I do want to point out one thing which is a lot of this courts case law talks about how the court shouldn't quote intrude into the zone of business judgment this was ultimately business judgment case because when the acquisition happened only a certain amount of drivers could be rehired they only had a need for a certain proportion of them what CEMEX did they knew the drivers could drive right because they worked for tight shirt they were acquiring this company it was a competitor they knew they could drive so it wasn't a skills contest what they set up with this interview is is sort of like an ability to test the soft skills because these drivers they do more than just deliver concrete to a plant they have to interact with dispatch they have to get to the plant and interact with a manager at the plant and talk to a maintenance employee they have to troubleshoot certain ideas and so sometimes when there's a subjective interview test and it doesn't really connect to the job at all then you're getting down the road of inferring discrimination because what does it really have to do with the job performance here this interview was a way to separate these employees by those soft skills CEMEX knew they could all drive it was just who can deal in customer relations the best who can answer these questions about safety the best and there's no dispute here that the interview scores were the sole reason whether somebody got hired or not everyone over a 15 out of 25 was hired on to work with CEMEX in the acquisition anybody that fell below that like mr. Brown who scored a 9 didn't and that was simply the reason with all that when we get to the pretext prong if we are past the prima facie which I would not concede but if we are on pretext he has to show both that that was wrong that they didn't use the interview scores as a basis not to hire him and that it connects to some kind of discriminatory intent he has no evidence whatsoever of discriminatory intent and each one of his points is just refuted by either one of this courts cases or a prominent California case in the Dodson case there was an interview given to the employee as to whether they would promote her she scored low on the interview they didn't when she brought her claim it was dismissed on summary judgment and then affirmed by this appeal I mean it's on all fours with our case it's an interview score the employee was claiming they said different things that it was wrong and this court re-emphasized as it has in the past the incorrect application of an internal process using that kind of criteria to make a hiring or rehiring or promotion decision is insufficient so what so in your view what do we do with the fact that he says well they you know here's what I here was my answer and and they just it doesn't matter even though he's his argument is well they didn't include it because they they wanted they wanted to minimize they wanted to minimize what they knew but about the effects of or the consequences of my disability that last part of what you said your honor is what's lacking there's no evidence that they wanted to minimize it for that reason you have to have something and look there's many ways you can show this right can be direct evidence you can have testimony from someone maybe not just these three interviewers but maybe you interview someone else who had a conversation with them and this is how a lot of these several I think and when he went through several of his several I think several different times when he when he stated or he stated what he said you know like to the EEOC and then his own notes about what he said he does make reference I think I can't remember in which context I'd have to look at my but he does make reference to he said that one of them he says my disability I was aware of my disability and whatnot well okay that's that's a good point too that I wanted to raise your honor his own subjective assessment or his assertion that it was discriminatory is also insufficient that's from the US Supreme Court Palmer versus the US he has to come forward with more if there was a testimony from an employee who overheard one of the interviewers say oh yeah you know we knew about his disability saying he's saying this is this is what I said you know he said I was I guess it was the one a question number five is that is that the one about safety which is the one about safety the first one is about safety I think five is yeah I guess it was I think one was about safety and he says you know because of my disability I was very sensitive to safety again even if what he's saying that that wasn't recorded down because they wanted to downplay but they wanted to downplay wanted to downplay part is what's missing here no direct evidence by the way this can also be shown through circumstantial evidence so you're not just limited to finding testimony from the interviewers you can show different treatment from similarly situated employees or vice versa like there's other ways to show it circumstantially and he's never shown that and if this court holds that all an employee has to do is say I didn't say that and because I didn't say that you must have discriminated against me and what we're gonna there's there won't ever be a case decided saying this is what I said correct your honor but even if what and we should have gotten a district court should you know essentially this all goes to the fact that the district court ended this case it on the prima facie claim on the prima facie requirement I understand your honor and I get the sense that perhaps on prima facie you're not totally convinced but when we when this court gets to pretext it's very clear there is no there's no no discrimination and that's where you actually have to come forward with evidence of discrimination prima facie burden is one thing but CEMEX has established a legitimate non discriminatory reason for not hiring him he scored a 9 out of 25 and only employees who scored a 15 out of 25 would advance the burden is on him to show pretext it was a second was question 5 also he made he says that he made a reference to his disability it is conflict the questions didn't ask anything about no I know but his answer he said this is what my this is my hand I don't believe so your honor there's nothing there's nothing it's undisputed one of the undisputed facts in the record what it was the one where they said had to do with where he said I don't know where the there were no there it's undisputed this is in the record on page 101 second volume no questions about his disability and his disability his explanation was he was especially conscious of safety consideration because that alone cannot simply because the employee raises that in the interview doesn't lead to any kind of discriminatory the discrimination and the discriminatory reported by the executives who were examining him doesn't that lead to an inference that they were against them because of discrimination no your honor because again they don't want to mention discrimination in their answers because they don't want a disabled person on that that is a extremely tenuous inference your honor to draw it would be one where any employee could survive this standard if if the court were on that particular question that we're talking about and we also have the fact that each question was a maximum score of five and they gave him a four out of five on his answer to that question that we're talking about so I mean also that's a problem in terms of raising an inference isn't it I mean if they were trying to bury his disability and use that as an excuse why were they giving him a high score on that question but your honor they probably give him a high score because he answered that one better than the other questions I mean if anything that cuts the other way and and says that he scored high on that so they actually appreciated that question from him and talking about his disability again he's just the one I was thinking of was five was five question five you have a question five there and what he put in his notes yes but again your honor he said he said I guess some people get spent when he's talking about he's talking about a cope a co-worker named doll and he's and the plaintiff said Brown says doll said I guess some people get special treatment around here why couldn't somebody you know if they believe that's what he said like why couldn't they and reasonably infer that was his subjective statement that's not what he said he was reporting from somebody else and a subject in a mere assertion is if you rewrite not rewrite it but when the he that he's the pronoun that he's talking about is doll yeah but even if all that were true and that's exactly how the interview took place there still would not be an inference of discrimination here I mean there's nothing this was a soft skills test it wasn't testing anything about his physical physical abilities to drive in fact it's uncontested that he doesn't even have a request for an accommodation for this as I mentioned a co-worker David doll and shared an incident when I called on the radio to request rock and David made a comment on the radio that bothered me he said I guess people get special treatment around here now when he's talking about rock he's talking about rock that goes into the cement correct on the foot they're talking on the I believe your honor I'd have to look at that particular statement but even that would not be sufficient to show any kind of discriminatory intent again it's his self-reported assessment of what somebody believed which under Palmer versus the United States is just simply not enough there's got to be some kind of circumstantial evidence and it's exactly if anything it's it's it's different on that basis and I think the fact that he didn't request an accommodation not only from CEMEX but from his former employee really kind of underscores here that there was no basis to discriminate against this person in fact CEMEX has carried his burden of showing that legitimate non-discriminatory reason which was his interview scores were low it's it's undisputed that this interview was not testing his physical ability or going into his disability in any way and and that's where a lot of these cases go wrong is the interview is either so subjective and vague and loose like they're asking strange questions that you can kind of infer we don't have that here they were testing the customer relations skills what you knew about safety all those things and he scored low and that was ultimately the reason why he wasn't hired so whether this case is affirmed either on the prima facie step 1 or under the step 3 pretext either way this court should affirm I'm happy to answer any other questions but I see I'm over time so thank you we'll put two minutes on the clock thank you honors I appreciate it just a couple of quick factual things defendants take the position Pele takes position that all of the scores from the different interviewers were the same that's not the record here there was only one unit where unitary score that was arrived at by the panel so there's no cross-checking there with respect to the story the account of mr. Ramirez and mr. school it coming down to the plant and observing mr. Brown's leg that is detailed with citations to the record in page 18 to 19 of the opening brief question number five is a really good window into into what the place cases in question number five the plaintiff is asked about problems with co-workers he talks about an experience in which a specific co-worker talked about him getting preferential treatment he talks about how he resolved it he talks about how he thinks it's important in his term to resolve the issue man-to-man one-to- one how he's not creating a ruckus he's gonna go and talk with this other employee about the conflict that they had he's talking about preferential treatment some people get it easier than others as a person who's an amputee talking to a room of people two of which have seen him with his amputated leg and don't want to talk about that the fact that they've seen him in deposition won't talk about the fact won't admit that they saw him with his amputated leg there's a nexus there in in in the circumstances as they actually occurred mr. schulich and mr. Ramirez they they misrepresented the degree to which they knew about it and observed your argument is because he mentioned he was getting preferential treatment company individuals who want to eliminate preferential treatment are discriminating here against him because by not giving him preferential treatment now what I am saying is that it there is an indication in the interview that the topic of disability is known topic of disability as related to this particular employee mr. Brown we know that from the deposition testimony when I deposed mr. schulich and mr. Ramirez we know that they took quite extraordinary steps to try to deny the degree to which they knew at the moment that they were in that interview that mr. Brown was an amputee who used a prosthetic so we go back to the idea that that an inconsistent story that simply does not make sense plus some indication of protected class and and mendacity by the employer can raise an inference of a of an animus all right the case of Brown versus the next construction materials is submitted and that completes our argument calendar for the morning
judges: PAEZ, BEA, FORREST